UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GERALD REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:16-cv-00359-SEB-TAB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

The parties appeared by counsel on December 20, 2016, for an oral argument on Plaintiff's brief in support of appeal. Set forth below is the Court's oral ruling from the bench following that argument. This ruling recommends that Plaintiff's brief in support of appeal [Filing No. 20] be denied and the Commissioner's decision be affirmed.

Plaintiff, Gerald Reed, applied for disability insurance benefits and supplemental security income alleging disability beginning on March 4, 2011. Plaintiff's application was denied initially and upon reconsideration.

Plaintiff appeared by counsel for a hearing and testified before an Administrative Law Judge. On September 11, 2014, the ALJ denied Plaintiff's claims. [R. at 17-29.] The Appeals Council denied Plaintiff's request for review, and this appeal followed.

Plaintiff, who was 46 years old at the time of the administrative hearing, worked as a chiropractor from approximately February 2007 through March 4, 2011, his alleged onset date. He also worked as an auto salesperson, a teacher and a chemist. Plaintiff's issues are related

primarily to back and hip problems, though the medical records denote other issues, including a left foot drop and atrophy of the left calf. Plaintiff's back pain started after a serious car accident when he was a teenager. [R. at 575.] Despite his back pain, Plaintiff opted to treat his hip problems first.

On June 6, 2011, Plaintiff underwent a consultation with Dr. Bryan Sipe, an orthopedic specialist. Dr. Sipe concluded that Plaintiff had advanced arthrosis of the left hip. [R. at 292.] Dr. Sipe discussed with Plaintiff a total hip arthroplasty. On August 2, 2011, Plaintiff underwent the total left hip arthroplasty. [R. at 492.]

By September 12, 2011, Plaintiff was doing "wonderful." [R. at 308.] He reported that he was very happy with the results of surgery, noting that his pain level was only 3 out of 10, with 10 being the most severe. [R. at 308.] As the ALJ noted, after his appointment in September of 2011, the record shows a 7-month gap in treatment. [R. at 24.]

On April 9, 2012, Plaintiff returned to the orthopedic clinic where he was seen by Richard Saylor, a physician's assistant. Plaintiff was doing well regarding his hip but complained of lower back pain with radiating pain to his legs. [R. at 314.] A CT scan of Plaintiff's lumbar spine taken on April 20, 2012, showed evidence of grade 2 spondylolisthesis of the lumbosacral spine, moderate to severe lumbar narrowing, as well as other lumbar abnormalities. [R. at 462.] Based on the findings of the CT scan, Plaintiff was recommended for back surgery. On June 6, 2012, Plaintiff underwent a lumbosacral instrumented fusion decompression surgery. [R. at 468.]

Plaintiff acknowledged his symptoms of radiculopathy and back pain had improved compared to his preoperative state. [R. at 473.] In July 2012, Plaintiff's surgeon said Plaintiff was healing at a satisfactory rate. [R. at 351.] Plaintiff acknowledged that he was improving,

but he was still using the assistance of crutches to walk.

On April 23, 2012, Plaintiff consulted with OSF Pain Center Dr. Christopher Rink. Dr. Rink reported that Plaintiff had been progressively improving since the back surgery and the aquatic therapy and was progressing as expected. [R. at 483-85.] Dr. Ami Rice examined Plaintiff on January 29, 2013, as part of the disability application process. Dr. Rice concluded that the clinical evidence did not support the need for an ambulatory aid. [R. at 52.] Plaintiff had tenderness along his back primarily in the lumbar spine region and had limitation of motion of the lumbar spine. Dr. Rice found Plaintiff had normal straight leg raising tests that showed no radiating back pain, full ranges of motion in his upper extremities but limited motion in his left hip and left ankle. In August of 2012, as Plaintiff was moving out of the state to Indiana, Dr. Travis Richardson wrote a letter on Plaintiff's behalf stating that Plaintiff was unable to maintain a full-time job and that Plaintiff met the criteria for Social Security disability. [R. at 202.]

In February of 2013, a state agency physician, Dr. Mark Ruiz, reviewed Plaintiff's medical records and assessed his physical functioning and concluded that Plaintiff could perform a range of light work. [R. at 49-51, 59-62.] In March of 2016, Dr. Michael Brill, a state agency physician, reviewed Plaintiff's updated medical records and reached the same conclusions.

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, with certain exceptions. [R. at 22-23.] At step 4, relying on a vocational expert, the administrative law judge found Plaintiff was capable of performing his past relevant work as a salesperson, teacher, chemist and auto salesperson. [R. at 28.]

In reviewing this decision, the issue is whether the decision is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as

3

adequate to support a conclusion. *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). If reasonable minds could disagree on whether a claimant is disabled, the Court must affirm the Commissioner's decision to deny benefits. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The ALJ need not discuss all the evidence in the record, but she may not cherry-pick only the evidence that supports the ALJ's conclusion. *Id.* The ALJ must fairly consider the evidence and build a logical bridge from that evidence to her conclusions. *Id.*

Plaintiff presses four arguments on appeal. Specifically, Plaintiff asserts that the ALJ selectively reviewed the evidence of Plaintiff's back impairments, improperly evaluated the statement of treating physician Dr. Richardson, erred in analyzing Plaintiff's credibility, and improperly prohibited Plaintiff from testifying about the physiology of his atrophy. I respectfully disagree.

While the ALJ could have discussed the evidence in greater detail, the ALJ did discuss Plaintiff's history of hip and back problems, his surgeries and his progress. [R. at 23-27.] Most notably, the ALJ relied on findings from Plaintiff's orthopedic surgeon, Dr. Sipe, who six weeks after back surgery reported that Plaintiff was doing wonderfully, had substantial reduction in his back pain, and could perform any activity as tolerated. [R. at 308-09.] Although Plaintiff used a crutch to walk at that time, Dr. Sipe encouraged Plaintiff to pursue physical therapy, with the goal of eliminating the use of the crutch.

The ALJ also relied on objective medical findings from an examining physician, Dr. Rice, who found that Plaintiff was able to walk without using an ambulatory aid, had full muscle strength, showed no evidence of atrophy or spasm, and had no evidence of left-sided weakness. [R. at 25, 521-22.] The ALJ also found the medical source opinions from the reviewing state agency physicians were entitled to significant weight because they were

4

persuasive and consistent with the objective medical evidence of record. [R. at 26, 30-62.]

Plaintiff is correct that the ALJ failed to discuss certain medical evidence from Dr. Richardson, including his April 19, 2012, and August 10, 2012, notes. However, the ALJ explained his reasons for giving less weight to Dr. Richardson's disability opinion and functional limitations. [R. at 26.] The ALJ declined to give the opinions persuasive weight because Dr. Richardson failed to identify specific clinical findings that showed Plaintiff was prevented from performing work activity. The ALJ stated that the treatment records were inconsistent with his opinion. [R. at 26.] Although the ALJ failed to identify the treatment notes upon which she was relying, the ALJ cited as an example the evidence after surgery that showed Plaintiff's condition was rapidly improving.

Similarly, the ALJ stated that Dr. Richardson's functional capacity limits were poorly supported by the objective medical evidence and were, thus, given very little weight. [R. at 26.] As noted elsewhere in the ALJ's decision, examination findings in January 2013 from Dr. Rice showed normal muscle strength, no atrophy, and a normal ability to walk without assistive devices. [R. at 25, 521-22.] Thus, while the ALJ did not discuss all the evidence, the ALJ gave sufficient reasons for not giving persuasive weight to Dr. Richardson's disability opinion. Thus, I find no reversible error with respect to the ALJ's review of the evidence, including Dr. Richardson's opinions.

Having addressed Plaintiff's first two arguments, I now turn to Plaintiff's third argument, which is that the ALJ erred in analyzing Plaintiff's credibility. An ALJ's credibility determination must be upheld unless it is patently wrong. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). As with Plaintiff's prior arguments, while I agree that the ALJ's credibility analysis is far from perfect, despite these shortcomings, I do not find that the analysis is patently wrong.

5

As discussed, the ALJ's conclusions are supported by the medical opinions and findings of the state agency reviewing physicians, Dr. Ruiz and Dr. Brill, and an examining physician, Dr. Rice, as well as various objective examination findings and opinions from Plaintiff's physicians. The ALJ also considered corroborating medical treatment history such as Plaintiff's history of surgeries with rapid recovery, his use of prescribed medications following surgery, followed by use of over-the-counter medications and no prescribed medications for a two-year period of time around the time of the hearing. The ALJ also considered Plaintiff's statements about his activities, which the ALJ acknowledged were fairly limited according to Plaintiff's description in his reports through the agency.

I am troubled by the ALJ's statement that Plaintiff's limited daily activities cannot be objectively verified with any reasonable degree of certainty. Such a truncated discussion runs contrary to the Seventh Circuit's decision in *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). Were this all the ALJ said on the matter of credibility, I would not uphold this finding. However, the ALJ also noted that at certain points in the record, Plaintiff admitted to more abilities than he alleged. [R. at 26-27.] For example at the hearing, Plaintiff testified that he camped, fished and hiked outdoors. [R. at 587-89.] The ALJ reasonably, albeit minimally, weighed these inconsistencies about Plaintiff's activities. An ALJ is in the best position to determine a witness's truthfulness and forthrightness. Based on this record, I cannot conclude that the ALJ is patently wrong.

Finally, Plaintiff argues that the ALJ improperly prohibited Plaintiff from testifying about this physiology of his atrophy. Essentially, Plaintiff argues that the ALJ should have allowed him to testify as a medical expert about his own condition because he was a chiropractor and, therefore, familiar with musculoskeletal and neurological symptoms of the body. This is a

6

somewhat unusual issue and an interesting one. On balance, however, I find the ALJ did not err in limiting Plaintiff's testimony to his condition as a claimant rather than as a medical expert expounding on the nature and severity of his own impairments. Obviously, Plaintiff would not be a neutral medical witness when testifying about his own condition, which does implicate conflict of interest issues.

I am reluctant to find that the ALJ erred by not allowing Plaintiff to testify as a medical expert about his own claim, given this inherent conflict of interest. But I think it's more important, as the ALJ noted, that a chiropractor does not have the required medical background to qualify under the regulations as an acceptable medical source. [R. at 583.] Plaintiff acknowledges this point in his reply brief. [Filing No. 30 at 17.] Therefore, I find the ALJ reasonably limited Plaintiff from testifying as a medical expert in his own claim.

As Plaintiff's counsel stated during the oral argument, there is evidence on both sides of this case. I agree. For that reason, and the reasons I've already set forth, I find that the ALJ's decision is supported by substantial evidence, and I will recommend that the decision be affirmed.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 1/20/2017

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov